UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

WAAD H. SULIMAN,

Plaintiff,

v.

**DECISION AND ORDER**
05-CV-25S

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,

Defendant.

1. Plaintiff Waad H. Suliman challenges an Administrative Law Judge's ("ALJ") determination that he is not disabled as defined by the Social Security Act ("the Act"). Plaintiff alleges that he became disabled in January 2000, due to head aches, neck pain, left hand and leg numbness, a kidney infection, and a breathing disorder. Plaintiff contends that his impairments have rendered him unable to work. He therefore asserts that he is entitled to payment of Supplemental Security Income benefits ("SSI") under the Act.

2. Plaintiff filed an application for SSI on January 16, 2002. His application was denied. At Plaintiff's request, an administrative hearing was held before ALJ Timothy McGuan on February 18, 2004. Plaintiff appeared with counsel at the hearing and testified. ALJ McGuan considered the case *de novo*, and on March 1, 2004, found that Plaintiff was not under a disability. On November 15, 2004, the Appeals Council denied Plaintiff's request for review. Plaintiff filed the current civil action on January 12, 2005, challenging Defendant's final decision.[1]

---

[1]The ALJ's March 1, 2004 decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

3. On August 1, 2005, the Commissioner filed a Motion for Judgment on the Pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Plaintiff filed a Memorandum in opposition to the Commissioner's Motion on September 15, 2005.

4. A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is evidence that amounts to "more than a mere scintilla," Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971), and is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

5. "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo*

review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

6. The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 404.1520, 416.920. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

7. This five-step process is detailed below:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. § 404.1520.

8. While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step of this inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his physical ability, age, education and work

experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

9. In this case, the ALJ made the following findings with regard to the five-step process set forth above: (1) Plaintiff has not engaged in substantial gainful activity since the alleged onset of his disability (R. at 21);[2] (2) Plaintiff's anxiety related disorders and affective disorder are "severe" based on the requirements in the regulations (R. at 21); (3) Plaintiff's impairments do not meet or medically equal one of the listed impairments in the listings (R. at 21); (4) Plaintiff has no exertional limitations, is moderately limited in his ability to understand, remember and carry out complex or detailed tasks, is moderately limited in his ability to concentrate for extended periods of time, and should avoid exposure to odors, dust, fumes, and gases (R. at 21); and (5) Plaintiff had no past relevant work. (R. at 20). Based upon his review of the entire record, the ALJ found that Plaintiff could perform work that existed in the national economy. (R. at 20). Ultimately, the ALJ determined that Plaintiff was not under a disability, as defined by the Act, at any time through the date of his decision, March 1, 2004. (R. at 21, 22).

10. After carefully examining the administrative record, this Court finds that substantial evidence in the record supports the ALJ's decision in this case. Specifically, the medical evidence supports the ALJ's determination that Plaintiff was not disabled. Moreover, the ALJ thoroughly examined the entire record, giving appropriate weight to all of the medical findings, including those reported by Plaintiff's treating physician. (R. at 15-

---

[2] Citations to the underlying administrative record are designated as "R."

20).

11. In challenging the Commissioner's final decision, Plaintiff contends that the ALJ misunderstood the term "fair," as used in an occupational adjustment form, that Plaintiff's counselor's assessment that his occupational adjustment skills are only "fair" is in fact evidence of his disability, and the ALJ's failure to properly consider that evidence constitutes reversible error. This Court does not agree. As an initial matter, this Court notes that the assessment contained in the "occupational adjustment form" was rendered by a social worker, and therefore, the ALJ was not obligated to consider this evidence to determine the severity of Plaintiff's impairment. (R. at 221). Medical opinions are statements from physicians or other acceptable medical sources that reflect judgments about the nature and severity of a claimant's impairments based on symptoms, diagnosis, prognosis, and what the claimant can still do despite his impairments and physical or mental restrictions. See 20 C.F.R. § 44.1527(a)(2). Social workers are not acceptable medical sources under the Commissioner's regulations. See 20 C.F.R. §§ 404.1513. Therefore, the social worker's assessment that Plaintiff's occupational skills were only "fair" is not a medical opinion entitled to controlling weight. See, e.g., Diaz v. Shalala, 59 F.3d 307, 313 (2d Cir. 1995).

Moreover, this Court finds that there is no evidence to suggest that the ALJ did not understand the meaning of the term "fair," as it relates to Plaintiff's ability to make occupational adjustments. The face of the assessment form clearly states that a rating of "fair" means that the "[a]bility to function in this area is seriously limited but not precluded." (R. at 221). In rendering his decision, the ALJ simply noted that, among other things, "the caseworker completed an occupational adjustment form and the ratings were mostly fair." (R. at 19). This does not constitute a misstatement regarding the social worker's

assessment nor does it reflect a fundamental misunderstanding of the term “fair.”

Moreover, the fact that the ALJ did not question the vocational expert regarding whether a person with a “seriously limited but not precluded” ability to make certain occupational adjustments could perform work does not indicate that the ALJ did not understand the social worker’s assessment, as Plaintiff contends. As previously noted herein, the ALJ was not required to afford controlling weight to the social worker’s evaluation of Plaintiff’s abilities in determining his residual functional capacity. Having reached a different conclusion with respect to Plaintiff’s restrictions, as he was authorized to do, the ALJ queried the vocational expert regarding a person with the particular limitations that he found were supported by the medical evidence. For the foregoing reasons, this Court finds that the ALJ’s decision does not reflect a fundamental misunderstanding of the social worker’s assessment such that the decision should be reversed.

12. Plaintiff further argues that the ALJ failed to properly apply the treating physician rule, because he selectively cited portions of a January 7, 2002 medical report rendered by Plaintiff’s treating physician, Dr. Griswold, but ignored portions of the report that would support a finding of disability. Specifically, the ALJ noted Dr. Griswold’s opinion that due to post traumatic stress, anxiety, and depression, Plaintiff could not work, but that “significant improvement is likely through rehabilitation and treatment . . . [and he] is expected to recover.” (R. at 17). The ALJ did not acknowledge Dr. Griswold’s assessment that Plaintiff’s impairments had lasted or could be expected to last for one year or more. (R. at 165).

According to the "treating physician rule,"[3] an ALJ must give controlling weight to the treating physician's opinion when the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." See 20 C.F.R. § 404.1527(d)(2); see also Green-Younger v. Barnhart, No. 02-6133, 2003 WL 21545097, at *6 (2d Cir. July 10, 2003); Shaw v. Chater, 221 F.3d 126, 134 (2d Cir. 2000). Stated differently, an opinion that is not based on clinical findings will not be accorded as much weight as an opinion that is well supported, see 20 C.F.R. §§ 404.1527(d)(3), 416.927(d)(3), and the less consistent an opinion is with the record as a whole, the less weight it is to be given. See 20 C.F.R. §§ 404.1527(d)(4), 416.927(d)(4).

Having reviewed the record, this Court finds that the ALJ properly credited Dr. Griswold's opinion when it was supported by objective medical evidence. However, Dr. Griswold's opinion that Plaintiff's disabling mental impairments had lasted or would last one year or more is inconsistent with the medical findings reported in the months immediately preceding and following her prognosis. Specifically, Dr. Griswold's durational prognosis is flatly contradicted by her own objective medical findings as well as those made by Dr. Burnett, a psychiatrist, and Dr. Dickenson, a licensed psychologist. For example, on March 19, 2001, Dr. Griswold reported that Plaintiff's mental status examination revealed a flat effect with no signs of anxiety, and that although Plaintiff had poor eye contact, his thoughts seemed goal directed. (R. at 115). On February 18, 2002, she indicated that although Plaintiff complained of neurological problems, his CT scans and several

---

[3] "The 'treating physician's rule' is a series of regulations set forth by the Commissioner in 20 C.F.R. § 404.1527 detailing the weight to be accorded a treating physician's opinion." de Roman v. Barnhart, No. 03-Civ.0075(RCC)(AJP), 2003 WL 21511160, at *9 (S.D.N.Y. July 2, 2003).

neurological examinations did not yield a diagnosis of a neurological disorder or abnormality. (R. at 113). That same date, Dr. Griswold noted that although Plaintiff's affect was flat, his mood was a little brighter. (R. at 113).

In March 2002, Dr. Dickenson observed that Plaintiff has low-average social skills but was appropriately dressed and groomed, his cognitive functioning was average, his insight was limited and his general judgment and attention were fair. (R. at 178-79). The psychiatrist opined that due to a depressive disorder, not otherwise specified, a low-average intellectual level, and mild social phobia, Plaintiff would have difficulty with complex tasks, independent functioning, and would have serious limitations with reading English and buying materials. (R. at 180-81). Nonetheless, Dr. Dickenson opined, Plaintiff was able to follow simple instructions, maintain concentration and attention, and seemed to be able to make appropriate job-related decisions as well as safety decisions. (R. at 180).

On April 19, 2002, Dr. Burnett completed a mental residual functional capacity assessment of Plaintiff. (R. at 185). Therein, he reported that Plaintiff was only moderately limited in the areas of understanding and memory, sustained concentration and persistence, social interaction, and adaptation. (R. at 185-86). Based on these findings, Dr. Burnett opined that Plaintiff had a depressive disorder, not otherwise specified, and a mild social phobia, but there was insufficient evidence to substantiate the presence of an organic mental disorder, a schizophrenic, paranoid or psychotic disorder, mental retardation, somatoform disorders, personality disorder, substance addiction disorder, or autistic or other pervasive developmental disorder. (R. at 190-98). Ultimately, Dr. Burnett concluded that Plaintiff's impairments did not meet listing level severity. (R. at 201).

Based on the foregoing, this Court finds that it was not improper for the ALJ to disregard Dr. Griswold's unsupported opinion regarding the probable duration of Plaintiff's impairments and his inability to work. It is the sole responsibility of the ALJ to weigh all of the medical evidence and resolve any material conflicts in the record. See Richardson v. Perales, 402 U.S. 389, 399, 91 S. Ct. 1420, 1426, 28 L. Ed. 2d 842 (1971). Because her own medical findings and those of Drs. Burnett and Dickenson were inconsistent with Dr. Griswold's durational prognosis, the ALJ was not required under the Commissioner's regulations to give it any weight.

13. Finding no reversible error and further finding that substantial evidence supports the ALJ's decision, Defendant's Motion for Judgment on the Pleadings is granted.

IT HEREBY IS ORDERED, that Defendant's Motion for Judgment on the Pleadings (Docket No. 7) is GRANTED.

FURTHER, that the Clerk of the Court is directed to take the necessary steps to close this case.

SO ORDERED.

Dated: September 27, 2006
Buffalo, New York

/s/William M. Skretny
WILLIAM M. SKRETNY
United States District Judge